IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| IMOGENE LEWIS, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 2:06-cv-196 |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act. For the reasons that follow, plaintiff's motion for judgment on the pleadings [Court File #11] will be denied, defendant's motion for summary judgment [Court File #16] will be granted, and the final decision of the Commissioner will be affirmed.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure and Title 42 of the United States Code, Section 405(g), Michael J. Astrue is automatically substituted as the defendant in this civil action.

I.

*Procedural History*

Plaintiff Imogene Lewis filed an application for supplemental security income benefits on September 26, 2004, alleging that she became disabled in May 1999 due to a bulging disc, arthritis, numbness in the right leg and foot, headaches, depression, acid reflux, a sleeping disorder, allergies and pain. In March 2006, plaintiff appeared at an administrative hearing before an administrative law judge (ALJ). At that hearing, plaintiff testified as follows when asked by her attorney what kept her from being able to work:

> I have always got pain in the lower part of my back and it runs down into my right leg and it gets numb. And it does the same thing in the left. It shoots pain down there and my feet burn and inside my legs like they are on fire, burning, too.

(R.179). No witnesses other than the plaintiff appeared at the hearing.

The ALJ subsequently submitted a decision in which he applied the five-step sequential analysis set forth in the Agency's guidelines. At step one, he concluded that the plaintiff had not performed substantial gainful activity since her alleged onset date. At steps two and three, the ALJ found that plaintiff had "severe" impairments, but no impairment or combination of impairments that met or medically

2

equaled a listed impairment. The ALJ found at step four that plaintiff had no past relevant work experience. However, he determined that plaintiff retained the residual functional capacity to perform a full range of light work. At step five, the ALJ considered plaintiff's residual functional capacity, age, education and vocational profile, and applied Medical-Vocational Rule 202.17, which directed a conclusion that plaintiff was not disabled. Therefore, the ALJ determined that plaintiff was not entitled to supplemental security income. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.

II.

*Factual Background*

Plaintiff Imogene Lewis has an 11th grade education and no past relevant work experience. She was born in 1959 and is currently 47 years of age.

III.

*Medical Evidence*

Two months following her alleged onset date, plaintiff had a relatively normal MRI of her lumbar spine; the only abnormality seen was a mild posterior

3

bulging of the L4-L5 intervertebral disc with only partial encroachment in the thecal sac.  In July 1999, plaintiff had a normal somatosensory evoked response study.  In August 1999, plaintiff had a nerve conduction/EMG study of her right leg, which also yielded normal results.

In February 2000, plaintiff was seen at Sneedville Medical Center with complaints of low back pain, upset stomach, osteoarthritis and sinusitis.  In September 2000, her complaints of low back pain continued.  In January 2001, plaintiff complained of low back pain, osteoarthritis, and dermatitis.  In March 2001, plaintiff complained of back pain as well as right leg pain and numbness.  On May 18, 2001, an MRI of plaintiff's lumbar spine showed a mild disc bulge at L4-L5 with no evidence of stenosis.  There was very slight spondylolisthesis of L5-S1.  The remainder of plaintiff's lumbar spine identified that she had no disc extrusion, spinal stenosis, or nerve root compression.

In September 2001, plaintiff was seen for a check-up and medication refills at Sneedville; however, treatment notes reflected no acute changes. She was not seen again until April 2002, at which time treatment notes again reflected no acute changes and that plaintiff was stable on her medications.  In August 2002, plaintiff complained of back pain and respiratory problems.  However, treatment notes reflected no acute changes and that she was stable on medication.  In

4

November 2002, plaintiff complained of sinus and allergy symptoms but reported "no other problems." In March 2003, plaintiff reported that her arthritis was acting up, but otherwise "had no complaints." In June 2003, plaintiff first complained of peripheral neuropathy.

Sneedville records of November 2003 reflect that plaintiff was diagnosed with bronchitis, low back pain, osteoarthritis, allergic rhinitis, and gastroesophageal reflux. She reported that she had marginal control of her left leg neuropathy through the use of Neurontin.

In December 2003, plaintiff was first seen at Healthstar Physicians West, having transferred because she was "unhappy with her previous primary care physician." She reported chronic back pain for many years, due to arthritis. She stated that she had "no other complaints" at that time. In April 2004, plaintiff was seen for watery eyes. She also complained of left elbow pain, which was improving, but no other complaints. On October 13, 2004, plaintiff underwent a consultative evaluation by Dr. Wayne Page. He took plaintiff's history, reviewed medical records and examined her. Plaintiff reported using a TENS unit and had back pain all over, but "no numbness, pain or tingling in the legs." Dr. Page found that there was "no functional inhibition by plasticity, rigidity or pain." Plaintiff had "no difficulty getting off and on the exam table or up from a chair." She reported her daily activities as

5

including watching television, talking on the phone, and occasionally washing dishes; however, "she declined to give any other information." Dr. Page concluded that the plaintiff had the ability to frequently and occasionally lift and carry 40 pounds. She could stand, walk and sit for eight hours in an eight-hour day with usual breaks. Dr. Page further found that plaintiff had no further impairments.

In January 2005, plaintiff was seen at Healthstar for complaints of joint and back pain and head congestion. She was assessed with a viral infection, chronic back pain, and gastroesophageal reflux disease. Plaintiff denied fatigue, weakness or any other symptoms. She was not in any acute distress.

In May 2005, a licensed psychological examiner, Alice Garland, saw plaintiff for a consultative evaluation. Plaintiff reported that medication has helped her with her nervousness and irritability, and that she had been on anti-depressants since 1989. The evaluator noted that the plaintiff had no formal mental health treatment. She reported having friends, having a good marriage, and raising two children who were "doing ok." During her mental status evaluation, plaintiff stated that she "did not know why she was here, the day of the week or the country she was in ... she did not know our current President ... could remember no recent Presidents ... and she did not know a recent news event."

Further, plaintiff described the colors of the American flag as "black and white." Plaintiff did not know how many months were in a year. Despite her responses, Examiner Garland found plaintiff's "thought processes were organized and concrete." Plaintiff reported that she was able to prepare a sandwich or a frozen dinner and that she visited her mother or drove to church once or twice a month. When asked the biggest reason she could not work, plaintiff said, "I can't drive - the pain - problem with my back and legs." Ms. Garland concluded that the plaintiff did not appear to be putting forth good effort. She declined to make a diagnosis or describe her limitations. Ms. Garland noted that the plaintiff had "only held one job and that was for six weeks years ago, and she appears to be a woman who is unlikely to enter the work force or stay at a job."

On April 13, 2005, Dr. Page again evaluated the plaintiff. Notes reflect that the plaintiff was "uncooperative and unreliable based on grip testing, back section, extremity section and neurological section." Upon examination of plaintiff's back, Dr. Page found that her complaints of tenderness in the lumbar area were "far out of proportion to pressure applied - pain behavior." Although plaintiff could stand independently on each leg, she exhibited "no effort with any lumbar range of motion pain behavior." She also showed "no effort with heel/toe walking, tandem walking, squat, lumbar lateral flexion, lumbar extension, toe touch, leg lift, sit up - each represents a pain behavior." While examining plaintiff's extremities, Dr. Page found

clinical strength testing was five out of five in all areas, and her fine manipulation was normal in both hands.  Further, plaintiff's range of motion was normal in all small and large joints except the following with pain behaviors in which she demonstrated "no effort" - bilateral shoulder abduction and forward elevation, hip bilateral flexion and extension, right hip abduction and adduction, internal and external rotation, and bilateral knee flexion."  Neurologically, plaintiff demonstrated no effort with strength testing.  Her motor and sensory testing was intact.  She demonstrated "no cooperation, with heel to shin and Rhombergs."  She showed no nerve root signs.  Dr. Page found that her mental status as well as recent and remote memory was intact.  She presented no objective signs of anxiety or depression.

At Healthstar, in July 2005, plaintiff reported that she had been hospitalized several years earlier "due to peripheral neuropathy in her legs."  Plaintiff was unable to tell the results, but thought it was "all reportedly due to back problems."

In April 2005, Dr. Andrew Miller, a State agency physician, reviewed the medical records.  Dr. Miller noted that plaintiff had a history of back complaints, while an MRI showed very slight spondylolisthesis and mild disc bulge with no stenosis.  He considered plaintiff's physical examination to be unremarkable.  Dr. Miller reported that the consultative examination of April 2005 showed that plaintiff's

appearance, gait and posture were normal; and while she appeared comfortable, she was "uncooperative" upon examination and that the results are unreliable. He noted that her complaints of tenderness in the lumbar region were far out of proportion to the pressure applied, and that she "gave no effort" to range of motion testing. Further, Dr. Miller considered that plaintiff's extremities appeared normal, while she "gave no effort" to range of motion or grip testing.

There is no medical opinion in the record that plaintiff suffers any impairment which interferes with her ability to perform any work-related tasks.

IV.

*Standard of Review*

"The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. ..." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

9

The Court also reviews the ALJ's decision to determine "whether the [Commissioner] employed the proper legal standards in reaching her conclusion." *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). When the ALJ's findings are not supported by substantial evidence, or if the ALJ has committed legal error, the reviewing court shall reverse and remand the case for further administrative proceedings unless "the proof of disability is overwhelming or ... the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Secretary of Health & Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).

V.

***Application of the Five-Step Sequential Evaluation Process***

Disability is evaluated pursuant to a five-step analysis summarized as follows:

    (1)    If claimant is capable of doing substantial gainful activity, he is not disabled.

    (2)    If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

    (3)    If claimant is not doing substantial gainful activity and is suffering from a severe impairment that lasted or is expected to last for a continuous period of at least 12 months, and his impairment meets or equals a

> listed impairment, claimant is presumed disabled without further inquiry.
>
> (4) If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> (5) Even if claimant's impairment does not prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 CFR § 404.1520). Plaintiff bears the burden of proof in the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

## VI.

### *Analysis*

The ALJ gave the plaintiff the benefit of the doubt and went through all five steps of the sequential evaluation process. He determined that plaintiff had the residual functional capacity to perform a full range of light work. He noted that plaintiff was 46 years old, which is defined as a younger aged individual, with no past relevant work experience and a limited education. He then applied the medical vocational grid which, considering plaintiff's residual functional capacity, age,

11

education, and work history, directed a conclusion that the plaintiff could not be considered disabled. I find that each of the ALJ's findings are supported by substantial evidence in the record.

With respect to plaintiff's medical impairments, the objective findings demonstrate only mild posterior bulging of the L4-L5 intervertebral disc with no evidence of nerve root compression or stenosis. No doctor opines that her back condition would limit her ability to perform work-related tasks. Plaintiff was twice evaluated by Dr. Page, who indicated that she could frequently and occasionally lift and carry 40 pounds and could stand, sit or walk for eight hours a day in an eight-hour work day with usual breaks. When she was evaluated by Ms. Garland, it was noted that the plaintiff did not appear to put forth good effort. The court also notes that plaintiff gave answers on her mental status exam which indicate that she was exaggerating her symptoms with regard to her mental functioning. For example, she gave the colors of the American flag as black and white, said that the next day after Saturday was Monday, and said that she did not know how many months there were in a year. That plaintiff exaggerated her back symptoms and gave little or no effort in assisting the physicians in evaluating the extent of her physical limitation is clear from the report of Dr. Page. (R.163-64).

Based on the foregoing, there is substantial evidence in the record to support the conclusion of the ALJ.  The objective medical findings do not support plaintiff's allegations of disabling pain and the reports of the medical evaluators significantly strain plaintiff's credibility.

VII.

*Conclusion*

In light of the foregoing, plaintiff's motion for judgment on the pleadings [Court File #11] is DENIED;  defendant's motion for summary judgment [Court File #16] is GRANTED;  and the final decision of the Commissioner is hereby AFFIRMED.

Enter judgment accordingly.

*s/ James H. Jarvis*
UNITED STATES DISTRICT JUDGE